**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EDISON GARCIA, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) )  Civil Action No. 1:17-cv-10891 |
| v. | ) ) |
| 15 TAYLOR, LLC and AARON PAPOWITZ, | ) ) |
| Defendants. | ) ) ) |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Edison Garcia ("Plaintiff" or "Garcia"), by and through his counsel, and Defendants, 15 Taylor, LLC ("15 Taylor") and Aaron Papowitz ("Papowitz") (collectively referred to herein as "Defendants"), by and through their counsel, (Garcia, 15 Taylor and Papowitz are collectively referred to herein as the "Parties") hereby respectfully move the Court for approval of this Motion for Preliminary Approval of Class and Collective Action Settlement ("Motion for Preliminary Approval"). Specifically, the Parties respectfully request that the Court enter an Order:

1) allowing the entry of Plaintiff's Amended Complaint, <u>attached as Exhibit A hereto</u>;[1]

2) provisionally certifying the proposed settlement classes under Section 216(b) of the Fair Labor Standards Act and Rule 23 of the Federal Rules of Civil Procedure in connection with the settlement process, as outlined in the exhibits hereto and below;

3) granting preliminary approval of the Settlement Agreement, Release, and Waiver ("Settlement Agreement"),[2] <u>attached as Exhibit B hereto</u>;

---

[1] To the extent the Court deems it necessary, in conjunction with this Motion for Preliminary Approval, Plaintiff hereby moves for leave to amend his complaint pursuant to FED. R. CIV. P. 15(a)(2). This leave is sought with the full consent of Defendants.

4)  appointing Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C. as Class Counsel;

5)  directing distribution of the proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notice"), <u>attached as Tab B to the Settlement Agreement</u>, in accordance with this Motion for Preliminary Approval; and

6)  setting the final fairness hearing for a date no later than seventy-five (75) days after Notice Date (as defined at page 5, <u>infra</u>), at the District of Massachusetts, Springfield Division, allowing counsel for the Parties to appear telephonically.

In support of their Motion for Preliminary Approval, the Parties submit the following incorporated memorandum.

## I.  <u>Introduction</u>

The parties hereby move jointly for preliminary approval of this class and collective action settlement, which has been reached after several months of arms-length and good faith negotiations. The settlement will provide a fair and reasonable recovery to various individuals employed in non-exempt positions by 15 Taylor who had potential claims arising out of the alleged failure to appropriately compensate them for all hours worked per workweek, overtime, and for travel time, and failure to reimburse certain travel expenses under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), as well as claims such individuals had under respective states' FLSA state-law analogues.

On April 5, 2017, Plaintiff, Garcia brought this collective and class action under Massachusetts law alleging violations of the Massachusetts Minimum Fair Wage Law and the Massachusetts Wage Act arising from failure to pay wage for overtime hours worked and wages related to travel time, as well as failure to reimburse employees for travel-related expenses.

---

[2]    The exhibits to the Settlement Agreement include the Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing, <u>Tab B thereto</u>, and the Consent to Join and Claim Form, <u>Tab C thereto</u>.

Plaintiff also alleged common law claims for breach of contract premised on the same alleged conduct.

Since the filing of this lawsuit, the Parties have voluntarily exchanged extensive information, including payroll and other pay records, time records and communications, needed for settlement, sought and received a stay from this Court to allow the Parties to explore the strengths and weaknesses of their respective positions.

The Parties' negotiations resulted in an agreement to settle the action on the terms set forth in the Settlement Agreement, attached hereto. The terms of the settlement are presumptively fair and well within the range of reasonableness for class and collective action settlements of this kind and are the product of arms'-length negotiations.

## II.    Summary of the Terms of the Settlement and Relief Presently Sought

The Settlement Agreement provides that, if approved, Defendants agree to pay a total sum not to exceed Sixty-Nine Thousand and Five Hundred Dollars ($69,500.00) (the "Total Settlement Amount") in order to fully and finally resolve the claims. (See, Settlement Agreement at § 5)  Due to the size of the putative class and the nature of the actions, the Parties have agreed that the cost a third-party settlement administrator is not necessary, and that Defendants shall administer the settlement.  (Id. at § 8) The Total Settlement Amount designed to cover all back pay and liquidated/statutory damages available under each applicable law, as well Class Counsel's attorneys' fees and costs up to fifty percent (50%) of the total fund, subject to Court approval. (Id. at § 5)    In addition, the settlement includes service payments to the named Plaintiff of up to but not exceeding $6,000. (Id. at § 7).  Finally, the settlement fund will pay the full amount of both the participating class members' W-2 withholdings (and state/local withholdings if applicable) and any employer share of payroll taxes on back wage payments made to participating claimants.  (Id. at §§ 5, 8)

In order to most effectively obtain resolution of all the federal and state wage and hour claims, the settlement encompasses both the FLSA claims, in the form of a collective action resolution (the "Federal Subclass"), and the state law claims in the form of a state law Rule 23 subclass (the "State Law Subclass").

According to 15 Taylor's records, there are approximately sixteen (16) putative members of all of the subclasses combined. Each claimant's payment will vary proportionately, as each claimant will receive a pro rata share of the net settlement amount based upon their potential recovery based on all of the relevant employment records when compared with the potential recovery of all other putative class members for the applicable period, with a minimum payment per class member of one-hundred dollars ($100.00) for the few class members who have a limited work history and few (if any) ascertainable damages.

The settlement provides that each individual who is a member of one of the subclasses shall be sent a notice. Upon receipt, in order to receive payment, these individuals must submit a Consent to Join and Claim Form ("Claim Form"), attached as <u>Tab C</u> to the Settlement Agreement, to be eligible as a Federal Subclass Member. The requirement of sending in a Claim Form does not apply to the named Plaintiff (Garcia), who will be paid upon consummation of the settlement by direct mail payment. The requirement of sending in a Claim Form does not apply to a State Subclasses right to relief pursuant to the terms of the Agreement. Joining this Settlement as a Federal Subclass member shall entitle the Federal Subclass member to 30% of their individual Claim Amount.

For individuals who send in Claim Forms (or, in the case of those individuals who will be mailed checks directly), 15 Taylor will obtain a release of all wage and hour claims that could have been asserted against it arising out of these individuals' employment with 15 Taylor while

in a non-exempt position during the applicable period, including FLSA claims.  (See id. at § 15). Individuals in the State Subclasses who do not timely file a valid Claim Form or enforceable request for exclusion, 15 Taylor will obtain a release of all wage and hour claims that could have been asserted against it arising out of these individuals' employment with 15 Taylor while in a non-exempt position during the applicable period. State Subclass members shall be entitled to 70% of their individual Claim Amount without the need to file a Claim Form.

Defendants will make all reasonable efforts to best ensure that each potential class member receives full and adequate notice of the settlement, which shall set forth the material settlement terms; instructions on how to submit objections to the settlement and when and where to appear at the final fairness hearing; and how to opt-out of the settlement altogether. See Settlement Agreement at Tab B.  Upon final approval, Defendants' Counsel will ensure distribution of the settlement funds to the class.

The Parties propose that, along with granting preliminarily approval of the settlement, the Court adopt the schedule set forth below, for the parties to effectuate the various steps in the settlement approval process under the Settlement Agreement:

|   | Event | Timing |
|---|---|---|
| 1 | Notice Date | No more than fourteen (14) days after the entry Order preliminarily approving the settlement |
| 3 | Deadline for filing Objections | Sixty (60) days after Notice Date |
| 2 | Deadline for filing Requests for Exclusion | Sixty (60) days after Notice Date |
| 4 | Deadline by which Claim Forms must be postmarked | Sixty (60) days after Notice Date |
| 5 | Final Fairness Hearing | No later than seventy-five (75) days after Notice Date. |

Accordingly, at this preliminary stage of the settlement process, the parties respectfully request that the Court enter an Order: (1) adopting Plaintiff's Amended Complaint; (2)

provisionally certifying the proposed settlement subclasses under Section 216(b) of the FLSA and Rule 23 of the Federal Rules of Civil Procedure with respect to the claims brought against Defendants, as outlined in the Amended Complaint and above, and in connection with the settlement process; (3) granting preliminary approval of the class Settlement Agreement; (4) appointing Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C. as Class Counsel; (5) directing distribution of the proposed Notice to all class members in accordance with this Motion for Preliminary Approval; and (6) setting the final fairness hearing for no later than seventy-five (75) days after Notice Date, as defined herein, at the District of Massachusetts, Springfield Division.

The parties believe that the proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal and state law and falls well within the range of possible approval.  Accordingly, the parties request that the Court grant the requested relief.

## III.    Procedural History

On April 5, 2017, Garcia, a former non-exempt employee at one of 15 Taylor's locations, filed his state wage class action complaint ("Complaint") in Suffolk County Superior Court, in an action entitled *Edison Garcia, on behalf of himself and all others similarly situated v. 15 Taylor, LLC and Aaron Papowitz*, Civil Action No. 1784-cv-01083 (the "State Court Action"). Through the Complaint, Plaintiff asserted that 15 Taylor violated the Massachusetts Minimum Fair Wage Law and the Massachusetts Wage Act, Massachusetts General Laws Ch. 149, §§ 148 & 150, and Ch. 151, §§ 1A & 1B, by, *inter alia,* instructing non-exempt employees to "bank" or "carryover" hours worked in excess of forty (40) hours per workweek to the next pay period to effectively prohibit employees from accruing overtime.

Plaintiff further asserted that Defendants failed to compensate employees for certain travel expenses and for travel time associated with traveling to properties owned and/or managed

by 15 Taylor in the scope of the employees' work for 15 Taylor. Plaintiff also alleged common law claims for breach of contract premised on the same alleged conduct.

Through the Complaint, Plaintiff sought to certify a class under Rule 23 of the Massachusetts Rules of Civil Procedure of all employees of 15 Taylor who were not compensated for overtime and/or who were not compensated for time spent traveling and reimbursed for all associated travel expenses.

Plaintiff served the Complaint on April 17, 2017, *via* certified mail. On May 17, 2017, Defendants timely removed the State Court Action to the District of Massachusetts, Springfield Division, and the case was ultimately assigned to this Court.  Shortly after Defendants filed the Notice of Removal, the Parties began initial settlement discussions.  On June 27, 2017, the parties filed a Joint Motion to Stay Proceedings Pending Settlement and requested that the Court extend Defendants' deadline to respond to the Complaint to August 25, 2017.  On June 30, 2017, this Court granted the Joint Motion to Stay and ordered that the Parties file a Joint Status Report by August 4, 2017.

Over the subsequent several weeks, the Parties exchanged information necessary to meaningfully evaluate the claims at issue in this litigation, and Plaintiff and Defendants conducted an analysis regarding: (1) potential liability if the case were to proceed; and (2) relative strengths and weaknesses of the legal merits of their respective cases. Due to the extensive nature of this pre-litigation investigative process, on August 1, 2017, the Parties filed Notice of Continued Settlement Discussions and Joint Motion to Continue Stay for an Additional sixty (60) Days Pending the Same.

On August 4, 2017, the Court granted the Joint Motion to Continue Stay and ordered that Defendants' deadline to respond to the Complaint be extended to October 24, 2017.   The Parties

continued to engage settlement discussions and the extensive exchange of information including pay records, time records, and communications related to Plaintiff's claims. (Forrest Declaration at ¶ 5), underlined attached as Exhibit C hereto. Class Counsel represents that he conducted significant factual investigation. (Id. at ¶6). Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and the potential defenses thereto, which included open discussions and debate between the Parties regarding the Parties' differing legal positions. (Id. at ¶7). The Parties also addressed the size and scope of the claims, the likelihood of success on the merits, the manner in which damages could be calculated and obtained, the likelihood of trial and what would occur at trial. (Id. at ¶8).

Both Parties are of the opinion that the Agreement is fair, reasonable, and adequate. Further, Plaintiff believes that the Agreement is in the best interest of the class in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential appellate issues Defendants may assert. Class Counsel has fully advised the representative Plaintiff of the Settlement Agreement, who approves of and consent to the settlement. (Id. at ¶9).

Defendants have expressly denied and continue to deny any wrongdoing or legal liability arising out of the action. Neither the Settlement Agreement nor any action taken to carry out the Settlement Agreement is, may be construed as, or may be used as an admission, concession, indication by or against Defendants or anyone else of any fault, wrongdoing, or liability whatsoever.

The Parties desire fully, finally, and forever to settle, compromise, and discharge all individual and class wage and hour claims that were asserted or could have been asserted in this or any related future actions.

**IV.    Legal Argument**

**A.    The Settlement Agreement Should Be Preliminarily Approved By the Court**

By this Motion for Preliminary Approval, the Parties seek preliminary approval of the Settlement Agreement. "Compromises of disputed claims are favored by the courts." Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); see also, Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990); In re Viatron Computer Sys. Corp., 614 F.2d 11, 15 (1st Cir. 1980); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II").

Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Federal Rule 23(e) provides that the Court must approve any settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks"). The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).

As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is well within the range of possible approval and thus should be preliminarily approved.

**1.    The standards and procedures for preliminary approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under Federal Rule of Civil Procedure 26(e); the objection may be withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997); and Durett, 896 F.2d at 604.

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval.  The Court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing. See, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("MANUAL FOURTH").  At the hearing on this Motion for Preliminary Approval, the Court is not required to make a final determination:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Id. at § 21.632, at 321.  Preliminary approval is the first step in a two-step process required before a class action may be finally settled.  Id. at 320.  At step one, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Id. at 320-21.  In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. Id. There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's length negotiations.  Durett, 896 F.2d at 604 (reversing denial of approval of settlement as an abuse of discretion and noting that "district court's discretion [in denying approval of settlements] is restrained by 'the clear policy in favor of encouraging settlements'").

In deciding whether a settlement should be approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous, final approval standard will be satisfied.  "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."  MANUAL FOURTH at § 21.633, at 321.  Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval.  Id. at 322.  The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate. See e.g., Durett, 896 F.2d at 604; Prudential II, 148 F.3d at 316-17; GM Trucks, 55 F.3d at 785.

11

## 2.    The settlement is fair, reasonable and adequate

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate.  See e.g., FED. R. CIV. P. 23(e); MASS. R. CIV. P. 23(c); Durett, 896 F.2d at 604; Sniffin v. Prudential Ins. Corp., 395 Mass. 415 (1985).

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small."  Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000); see also, City P'ship Co. v. Atlantic Acquisition Ltd. P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996).

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement."  In re Relafen Antitrust Litig., 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).  As a result, the courts of the First Circuit rely variously on a number of factors, the most common of which include:  (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; (8) the settlement's terms and conditions.  See, e.g., Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. at 72; In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); Celluci, 191 F.R.D. at 8-9; M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-833 (D. Mass. 1987).

12

In the case at bar, an examination of each of these factors demonstrates that the proposed settlement is fair, reasonable, and adequate to the members of the class, and should be preliminarily approved by the Court.

First, with respect to complexity, expense, and duration of litigation, it is clear that the prosecution of this case would be lengthy and expensive. If this settlement is not approved, the Parties face an extended and costly battle first regarding conditional and class certification and then summary judgment on the merits of whether the employees were not properly compensated for all hours worked, including travel time. In addition, the Parties would have to conduct expensive additional discovery in preparation for trial, and would potentially face a lengthy and costly class action trial. Further, if this case does not settle, it would likely take years generating enormous legal fees before reaching final resolution, including exhaustion of all appeals.

Second, with respect to the amount of the proposed settlement compared to the amount at issue, the Parties agree that the value of the settlement is fair and reasonable given the various challenges facing Plaintiff. Further, given the risk that Plaintiff and the putative class could recover nothing if this litigation were to proceed, the Parties agree that this settlement amount is entirely appropriate and very favorable to the Plaintiff and the class he represents.

Third, with respect to the reaction of the class to the settlement, the Court will be able to evaluate this factor after the notice period.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, the Class Counsel received all requested information they determined necessary in order to estimate the aggregate class damages for all claims in the case, and thus allowing them to assess the fairness of the settlement. Also, while the Parties are at the outset of the case, the Parties have already engaged in extensive discussions about the relevant facts and legal merits of the

claims asserted in the case. These discussions have focused for the Parties a number of practical and legal issues presented by this case, and this settlement will resolve the risks which the Parties fully appreciate at this point in the litigation.

Fifth, with respect to the Plaintiff's likelihood of success in obtaining class certification and in recovering on the merits of the case, Plaintiff recognized that given the size of 15 Taylor and its limited number of employees, the putative class was small and would make obtaining class certification risky.  Finally, Plaintiff recognized that surviving summary judgment, or avoiding a significant reduction in available damages, would have been a significant hurdle.

Sixth, with respect to whether the agreement provides benefits which Plaintiff could not achieve through protracted litigation, the settlement provides the benefit of a prompt and fair resolution to all claims in the Amended Complaint, and the avoidance of delay of the class members' receiving their portion of the settlement amount.

Seventh, with respect to whether the settlement was reached as the result of good faith dealings and the absence of collusion, there is no evidence that this is not the case.  Both Plaintiff and Defendants are represented by experienced counsel in class action wage and hour litigation, who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients.  The settlement was negotiated on behalf of Plaintiff by a team of attorneys who have successfully represented numerous class representatives and putative classes in class actions, including other court approved settlements of class action wage and hour cases.[3]

---

[3] See e.g., Hyman et al. v. Metropolitan Prop. & Casualty Ins. Co., Inc., et al., CA No. SUCV-1684CV00488-BLS2 (Allowed, August 23, 2017); Kappotis, et al. v. Bertucci's, Inc. et al., CA No. SUCV-1584CV03821-BLS1 (Allowed, February 24, 2017); Edwards et al. v. Liberty Mutual Insurance Company, CA No. SUCV2015-02872-BLS2 (Allowed, January 12, 2017); Reis et al. v. Knight's Airport Limousine Service, Inc., et al., CA No. WOCV2014-01558C (Allowed, November 10, 2015); Fama et al. v. Bactes Imaging Solutions, Inc., Suffolk Superior Court, C.A. No.: 13-01435-BLS1, consolidated with 13-00681-BLS1; 13-04165-BLS1; and 14-00352-BLS1 (Final Approval Granted May 6, 2015); Kraft, et al. v. Plymouth Rock Assurance Co., Suffolk Superior Court, C.A. No.: 12-3038 BLS1 (Final Approval

Further, the experience and reputation of counsel is paramount, and, as noted above, the Parties were represented by experts in this area of law.  See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

This settlement was specifically negotiated by experienced counsel to assure all class members their rights under the applicable laws, and was not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel.  Further, continued litigation would be long, complex and expensive, and a burden to court dockets.[4]

There is no reason to doubt the fairness of the proposed Settlement Agreement as not only was the Settlement Agreement the result of protracted, good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated among counsel upon the review of extensive employment records.  The $69,500 settlement amount is a substantial result for a wage and hour class of approximately sixteen (16) individuals and will undoubtedly result in a fair payment to each

---

Granted 6/11/13); and Flores, et al. v. Government Employees Ins. Co., Suffolk Superior Court C.A. No.: 13-2125A (Final Approval Granted 12/17/14).

[4] Litigating Plaintiff's claims would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Defendants denies that any violations of law have occurred or are occurring, Defendants would possibly appeal any adverse ruling. Similarly, Plaintiff would possibly appeal any adverse ruling. In contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the class. Such a result will benefit the Parties and the court system.  Certainly, putting the matter out for notice in order to determine the reaction of the classes as a whole is warranted.

settlement class member.  The final amount will be estimated with more detail for final approval and will be determined by the scope of the claims made and each employee's individualized work history.  Significantly, the amount that individuals will receive will be determined based upon their potential recovery in the event of a favorable class ruling when compared to each member of the putative class during the applicable statutory period.  Accordingly, fairness in payments will result.

The result is well within the reasonable standard.  Plaintiff's counsel also believe that the result is appropriate when considering the difficulty and risks of litigating class claims that involve the alleged misclassification of employees under the executive exemption of the FLSA and applicable state laws and failure to pay overtime.

Accordingly, the standards for preliminary approval are met in this case and the Court should grant the present motion.

**B.    Provisional Certification of the Settlement Classes is Appropriate**

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. See, e.g., Amchem, 521 U.S. at 591; In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also, Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998); and Prudential II, 148 F.3d at 283.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status."  Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also, In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it).  This is also the case in other circuits.  See e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.1985) ("[t]he interests of justice require that in a

doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class

action"). Here, as set forth below, all the elements of Rule 23 are met with respect to the

proposed settlement, which, accordingly, merits class certification.

### 1. The Elements of Rule 23(a) are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal

Rules of Civil Procedure, a named plaintiff must establish each of the four threshold

requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all only if (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R Civ. P. 23(a). See e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four

requirements of Rule 23(a) must be met in order for certification of a class to be proper");

Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); Prudential II, 148 F.3d at 308-

09. Here, all four elements are easily satisfied. Specifically, the proposed settlement consists of

the following subclasses:

> a. **FEDERAL SUBCLASS** – all individuals who have filed consents
> to join the Action (including without limitation all individuals who
> timely return a Claim Form containing a consent to join the
> Action) in any state in the United States and who worked for 15
> Taylor in a non-exempt position within three years prior to filing
> their consent to join the Action.
>
> b. **STATE SUBCLASS** – all individuals who worked for 15 Taylor
> in a non-exempt position in Massachusetts, Connecticut or any
> other state at any time within the period of three years prior to the
> filing of the initial Complaint in this action through the date of
> final court approval of the class action settlement.

### 2.    Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Plaintiff is not required to come before the Court and detail, to the person, the exact size of the class or to demonstrate that joinder of all class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  Advertising Special. Nat. Ass'n v. Federal Trade Comm'n, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948).; see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members of a class is not necessary").  Furthermore, "numbers alone" are not determinative of numerosity, but rather, "the facts and circumstances of each case are to be taken into account to determine numerosity under Rule 23(a)(1)."  Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985).  Numerosity is achieved here because it is not practicable for all members of the putative class to be joined in this action given their varying geographic locations. (Settlement Agreement at 2) .

### 3.    Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case."  So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[5]

---

[5]      Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting

Here, commonality is met insofar as the claims of the class representative and all class members are all predicated on the core common issue as to whether Defendants' pay practices properly compensated them for all hours worked per workweek and for travel time.  See e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 18 (D. Mass.2010) ("Commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members."); George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 175 (D. Mass. 2012)( "[H]ere the allegations against the Corporate Defendants are that their wage policies facially violated state law, which requires little individual inquiry."); see also Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only "illustrative" (quoting Berenson v. Fanueil Hall, 100 F.R.D. 468, 470 (D. Mass. 1984)).

Here, the claims arise from whether 15 Taylor employees were denied overtime compensation as a result of a corporate employment policy that applies to all 15 Taylor employees in non-exempt positions.  The lawsuit further challenges 15 Taylor's policy for compensation of travel time and reimbursement of travel-related expenses, which, again, is a corporate employment policy that applies to all non-exempt employees who travel to various

---

only individual members."  FED. R. CIV. P. 23(b)(3).  Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)."  In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").

Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2).  See, e.g., 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; accord So. States Police Benevolent Ass'n, 241 F.R.D. at 87.  "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases."  Natchitoches Parish Hosp. Servs. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

property sites owned and/or managed by 15 Taylor. In a settlement context, this case is illustrative of a common issue sufficient to meet the 23(a)(2) standard.

### 4.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.[6]  The typicality requirement is satisfied when the class members' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory."  Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996); see also Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").  Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories."  In re Carbon Black Antitrust Litig., 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also, Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[7]

---

[6] The commonality and typicality requirements of Rule 23(a) "tend to merge."  Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  See e.g., Id.; In re Screws Antitrust Litigation, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); Prudential II, 148 F.3d at 311; Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977); Asbestos School Litig., 104 F.R.D. at 429-30.

[7] In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims."  In

This requirement is also met by the class proposed by Plaintiff, since he held one of the non-exempt positions that required travel among multiple properties owned and/or managed by 15 Taylor properties.  Plaintiff further alleges that he was instructed to, and did, "bank" or "carryover" his hours worked in excess of forty (40) per week to the next week per a purported policy of Defendants' that prevented adequate compensation of overtime. Thus, Plaintiff's claims are "typical" with regard to the entire class.  Further, this requirement is met by the proposed settlement class as Plaintiff claims that the claims allegedly all arise from a common course of conduct by Defendants.  Thus, for the purpose of settlement, Plaintiff contends that each plaintiff would put on would be essentially the same case (hence, commonality) and the named class representatives would, themselves put on that case (hence, their claims are typical).

### 5.    Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  In the First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." Bouchard v. Sec. of Health & Human Servs., No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); see also Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation").  These two components are designed to ensure that absentee class members' interests are fully pursued.

---

re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005) (quoting Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)); Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984).

Adequacy is met here – plaintiff's attorneys, proposed Class Counsel, are experienced in complex litigation and have an established track record in employment law and class actions, including, specifically, the settlement of wage and hour cases. See, fn. 3 supra.  In turn, the class representative has no interests whatever antagonistic to the class and has demonstrated his allegiance to this litigation through his patience and participation in the settlement process on behalf of all of these putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiff now turns to consideration of the factors which, independently, justify class treatment of this action under subdivision 23(b)(3) of the rule.

### 6.    The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

Plaintiff's proposed class also meet the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though

individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978); see also, In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Dietrich, 192 F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. See, e.g., Smilow, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); In re Telectronics Pacing Systems, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and whether these issues are common to the class. If so, particularly in the settlement context, common questions are held to predominate over individual questions. See, Id.

Plaintiff asserts that common questions of law and fact predominate. All of Plaintiff's claims arise out of common corporate-wide policies defining how employees recorded hours worked and travel time and were reimbursed for travel-related expenses. According to Plaintiff, this presents common operative facts and common questions of law which predominate over any factual variations in the application compensation and reimbursement policies to individual benefits analysts nationwide.

These common questions of law and fact include, without limitation:  (a) whether Defendants' compensation policy is proper under applicable federal and state laws; and (b)

whether Defendants have violated applicable state laws by failing to pay non-exempt employees for all wages owing and due them; (c) whether Defendants' policy for recording and compensation of travel-related time is proper under applicable federal and state laws; and (d) whether Defendants' travel-related expense reimbursement policy is proper under applicable federal and state laws. These common questions of law and fact suffice in this settlement class to present a predominance of common issues for the purpose of settlement.

Plaintiff also asserts that superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against Defendants in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits and given the commonality of claims relating to standard policies, there would be little or no interest for each class member to proceed with their own case – indeed, the plan of distribution treats all class members equitably by providing payments based upon length of employment.

Accordingly, strictly for the purposes of settlement, the Parties agree that there is no danger that individual variations, type or magnitude of damage suffered by individual class members will affect predominance, as the class representative has suffered the same type of damages – and seeks the same type of relief – as all members of the proposed class.

Finally, resolution of this litigation by class settlement is superior to the individual adjudication of class members' claims for compensatory relief.  In particular, the settlement provides class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be

caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly in the settlement posture in which the case now stands, the matter is appropriate and should be certified for settlement purposes.

### C.    The Proposed Notice Provides Adequate Notice to The Class

### 1.    The Notice Satisfies Due Process

The Parties propose that Defendants send, by first class mail, to each member of the settlement subclasses, as defined above and in the Settlement Agreement (see Settlement Agreement at § 9) a Notice (see, Settlement Agreement at Tab B) and a Claim Form (see Settlement Agreement at Tab C).

The Parties propose that the Notice and Claim Form be sent to all known and reasonably ascertainable class members based on Defendants' records.  This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable.  See e.g., Wright v. Linkus Enters., Inc., No. 2:07-cv-01347-MCE-CMK, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting FED. R. CIV. P. 23(c)(2)(B), (e)); Davis v. Abercrombie & Fitch Co., No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using same method as applied here); In re M.L. Stern Overtime Litig., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding same mail procedure as applied here to be the "best notice practicable"); Adams v. Inter-Con Security Sys., Inc., No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using same mail

procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

> ### 2.     The Proposed Class Notice is Accurate, Informative and Easy to Understand

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the federal class or opt-out of the state class. See e.g., Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 523 (1st Cir. 1991) (stating "the court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure fairness for the class members" (quoting 3B MOORE'S FEDERAL PRACTICE ¶ 23.91 at 23-533 to 23-534)); Prudential II, 148 F.3d at 326-27; and Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996).

Here, the proposed Notice provides information on the meaning and nature of the proposed settlement, the principal terms and provisions of the Settlement Agreement, the monetary and other relief the settlement will provide class members (including an explanation of the method of allocating and paying net settlement amount monies to claiming class members and of the claims process), the procedures and deadlines for opting-in to the federal class or opting-out of the state class and submitting objections, the consequences of taking or foregoing the various options available to class members, and the date, time and place of the final settlement approval hearing.  Pursuant to FED. R. CIV. P. 23(h), the proposed class notice sets forth the maximum amount of attorneys' fees and costs which may be sought by present party plaintiffs and their counsel.

The Parties also agree that the Notice fulfills the requirement of neutrality in class notices. See, 4 NEWBERG ON CLASS ACTIONS at § 8.39. It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the settlement – including an explanation of how the settlement amount will be allocated between the named Plaintiff, Class Counsel, and the class members – in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's requirement that "the notice contain a clear, accurate description of the terms of the settlement." MANUAL FOURTH at §21.312. The Notice clearly states that the settlement does not constitute an admission of liability by Defendants, and it makes clear that the final settlement approval decision has yet to be made. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. See e.g., 4 NEWBERG ON CLASS ACTIONS at §§8.21, 8.39; MANUAL FOURTH at §§21.311-21.312.

### D.    A Final Fairness Hearing Should be Scheduled

The Court should schedule a final fairness hearing to determine that class certification is proper and to approve the settlement. The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the class certification and settlement, including the fairness, adequacy and reasonableness of the settlement. At that time, moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h) as well as for the award to the named class representative and two opt-ins who joined the suit prior to this settlement.

Accordingly, the Parties request that the Court schedule the final fairness hearing for no later than seventy-five (75) days after the Notice Date, at the District of Massachusetts, Springfield Division.

V.    <u>**Conclusion**</u>

For the foregoing reasons, the Parties respectfully request that this Court enter an Order: (1) adopting Plaintiff's Amended Complaint; (2) provisionally certifying the proposed settlement class and subclasses under Section 216(b) of the FLSA and Rule 23 of the Federal Rules of Civil Procedure with respect to the claims brought against Defendants, as outlined in the Amended Complaint and above, and in connection with the settlement process; (3) granting preliminary approval of the class Settlement Agreement; (4) appointing Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C. as Class Counsel; (5) directing distribution of the proposed Notice to all class members regarding settlement of the claims against Defendants on a final and complete basis, in accordance with this Motion for Preliminary Approval; and (6) setting the final fairness hearing for no later than seventy-five (75) days after Notice Date, as defined herein, at the District of Massachusetts, Springfield Division, also permitting counsel for the Parties to appear telephonically for the same.

Respectfully submitted,

Plaintiff,                                                            Defendants,
By his attorneys,                                              By their attorney,

/s/ *David R. Relethford, Esq.*                    /s/ *Christopher M. Pardo, Esq.*
David R. Relethford, Esq.                           Christopher M. Pardo, Esq.
Michael C. Forrest, Esq.                             Constangy, Brooks, Smith & Prophete, LLP
Forrest, LaMothe, Mazow, McCullough,    535 Boylston Street, Suite 902
Yasi & Yasi, P.C                                          Boston, MA 02116
1 Salem Green, Suite 2                              Telephone:    617.849.7884
Salem, MA 01970                                       Facsimile:     617.849.7874
Telephone:    617.231.7829
Facsimile:     617.517.3271


DATED:  November 8, 2017.