## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDISON GARCIA, on behalf of himself and all others similarly situated, | ) ) ) | |
|  | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-cv-10891 |
| v. | ) ) | |
| 15 TAYLOR, LLC and AARON PAPOWITZ, | ) ) | |
| Defendants. | ) ) | |
|  | ) | |

## MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

### I.    PROPOSED CLASS FOR SETTLEMENT PURPOSES

Pursuant to the Settlement Agreement, the Parties have stipulated, for settlement purposes only, to a Settlement Class which was preliminarily approved by the Court on May 11, 2018.  The claims subject to the Settlement Agreement include potential claims arising out of the alleged failure to appropriately compensate employee Class Members for all hours worked per workweek, overtime, and for travel time, and further, alleged failure to reimburse certain travel expenses under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"),  and analogous state laws.

### II.    BACKGROUND

On April 5, 2017, Plaintiff Edison Garcia ("Plaintiff" or "Garcia") brought this collective and class action under Massachusetts law alleging violations of the Massachusetts Minimum Fair Wage Law and the Massachusetts Wage Act arising from failure to pay wage for overtime hours worked and wages related to travel time, as well as failure to reimburse employees for travel-related expenses.  Plaintiff also alleged common law claims for breach of contract premised on the same alleged conduct. That is, Plaintiff's Class Action Complaint asserts causes of action against

15 Taylor, LLC ("15 Taylor") and Aaron Papowitz ("Papowitz") (collectively, herein, "Defendants") for breach of contract, violations of M.G.L. c. 149, § 148; M.G.L. c. 151, § lA and 454 CMR 27.04(4), as well as declaratory judgment.

More specifically, Garcia claims that Defendants habitually refused to pay Class Members overtime as required by law, refused to compensate Class Members for all travel time as required by 454 CMR 27.04(4) and that these habitual failures to comply with Massachusetts law constituted violations of, *inter alia*: M.G.L. c. 151 § 1A; M.G.L. c. 149, § 148; and 454 CMR 27.04(4).

Following the filing of Plaintiff's Class Action Complaint, counsel for the Parties conducted extensive arms-length negotiations and confirmatory discovery in an effort to settle the claims of all Class Members. The Parties have voluntarily exchanged extensive information, including payroll and other pay records, time records and communications, needed for settlement, and to allow the Parties to explore the strengths and weaknesses of their respective positions.  See, Exhibit 1 (*Declaration of Defendants' Representative*).

The Parties' negotiations resulted in an agreement to settle the action on the terms set forth in the Settlement Agreement. Thereafter, the Parties entered the Settlement Agreement memorializing the finalized terms of their arms-length negotiation, which was presented to the Court in association with their Motion for Preliminary Approval. The Parties assert that, as a result of arm's-length negotiations by informed counsel, the terms of the Settlement Agreement are fair and deserving of final approval.

On or about April 18, 2018, the Parties appeared telephonically before the Honorable Judge Mark G. Mastroianni and presented the Motion for Preliminary Approval of Settlement to the Court, along with all the supporting documentation, including the Settlement Agreement and

proposed Notice. The Court requested certain changes be made to the Preliminary Approval Order and Notice. The Parties promptly made the Court's requested changes and filed the revised Preliminary Approval Order and revised Notice.

On or about May 11, 2018, the Court Preliminarily Approved settlement in the above-captioned action. On May 25, 2018, in accordance with the terms of the Settlement Agreement and the Court's Preliminary Approval Order, Defendants compiled and mailed the revised Class Member Notice Packets to members of the Settlement Class. See Exhibit 1. Defendants sent the revised Notice Packets by First Class U.S. Mail to each member of each of the Settlement Classes at such individuals' last known address. See Exhibit 1.

If a Notice Packet was returned undeliverable, Defendants promptly attempted to locate such Settlement Member of the Classes by an electronic search through a recognized database and re-mailed once the Notice Packet to such address obtained from the electronic background search within ten (10) days of receipt of the undeliverable notice. See Exhibit 1.

As of the filing of this motion for final approval, the Parties have not received any objection to the terms of the proposed settlement. See Exhibit 2 (*Affidavit of David Relethford, Esq.*).

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides that, if approved, Defendants agree to pay a total sum not to exceed Sixty-Nine Thousand and Five Hundred Dollars ($69,500.00) (the "Total Settlement Amount") in order to fully and finally resolve the claims. See Exhibit 3 at § 5 (*Settlement Agreement*). Due to the size of the putative class and the nature of the actions, the Parties have agreed that the cost a third-party settlement administrator was not necessary, and that Defendants shall administer the settlement. Id. at § 8.

The Total Settlement Amount designed to account for the full amount, based on available documentation and forensic information, of all alleged back pay and liquidated/statutory damages available under each applicable law, as well Class Counsel's attorneys' fees and costs up to fifty percent (50%) of the total fund, subject to Court approval. Id. at § 5.

In addition, the settlement includes an incentive award/service payment to the named Plaintiff in an amount not to exceed $6,000. Id. at § 7.  Finally, the settlement fund will pay the full amount of both the participating class members' W-2 withholdings (and state/local withholdings if applicable) and any employer share of payroll taxes on back wage payments made to participating claimants. Id. at §§ 5; and 8.

In order to most effectively obtain resolution of all the federal and state wage and hour claims, the settlement encompasses both the FLSA claims (in the form of a collective action resolution (the "Federal Subclass")) and the state law claims (in the form of a state law Rule 23 subclass (the "State Law Subclass")).

According to 15 Taylor's records, there are sixteen (16) putative members, of all of the subclasses combined.  Each claimant's payment will vary proportionately, as each claimant will receive a *pro rata* share of the net settlement amount based upon their potential recovery based on all of the relevant employment records when compared with the potential recovery of all other putative class members for the applicable period, with a minimum payment per class member of one-hundred dollars ($100.00) for the few class members who have a limited work history and few (if any) ascertainable damages.

The settlement provided that each individual who is a member of one of the subclasses was sent a Notice Packet.  See Exhibit 1 at ¶ 4.

To be eligible to receive payment as a member of the Federal Subclass, individuals were required to submit a Consent to Join and Claim Form.  Joining this Settlement as a Federal Subclass member shall entitle the Federal Subclass member to 30% of their individual Claim Amount. As of the filing of this motion, 5 Class Members have returned there FLSA claim forms and are eligible members of the Federal Subclass. See Exhibit 1.[1]

The requirement of sending in a Claim Form does not apply to a State Subclasses right to relief pursuant to the terms of the Agreement.

For individuals who send in Claim Forms (or, in the case of those individuals who will be mailed checks directly), 15 Taylor will obtain a release of all wage and hour claims that could have been asserted against it arising out of these individuals' employment with 15 Taylor while in a non-exempt position during the applicable period, including FLSA claims.  See Id. at § 15.

State Subclass members shall be entitled to 70% of their individual Claim Amount without the need to file a Claim Form.

## IV.    FINAL CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Federal Rule 23(e) provides that the Court must approve any settlement of a class action.  In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity."  In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks").  The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion.  Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).

---

[1] The requirement of sending in a Claim Form does not apply to the named Plaintiff (Garcia), who will be paid upon consummation of the settlement by direct mail payment.

As this court has recognized, "[u]nder Federal Rule of Civil Procedure 23(e)(2), a settlement must be "fair, reasonable, and adequate." Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 343 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015), citing, Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009); and City P'ship Co. v. Atlantic Acquisition Ltd., 100 F.3d 1041, 1043 (1st Cir.1996) ("A district court can approve a class action settlement only if it is fair, adequate and reasonable."). As such, the court's role in reviewing a class action settlement for final approval is as "a fiduciary for the absent class members, protecting them from an unjust or unfair settlement. Id. (internal citations omitted).

When considering a motion for final approval for a class settlement, the Court must conduct a comprehensive assessment of the settlement terms, the interests of class members, the interests of other third parties that might be affected, and the surrounding circumstances of the litigation. Duhaime v. John Hancock Mut. Life Ins. Co., 183 F.3d 1, 2, 7 (1st Cir.1999); see also In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 805 (3d Cir.1995) ("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims.")

Further, when making a determination as to the fairness of a settlement, the Court should "consider both the substantive terms of the settlement compared to the likely result of the trial and 'the negotiating process by which the settlement was reached.'" Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (internal citations omitted). Moreover, the "fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." Id.

Finally, the court must analyze whether the interests of the class are better served by settlement than by further litigation. See In re Relafen Antitrust Litigation, 360 F. Supp. 2d 166 (D.Mass. 2005); Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

### A. The Settlement is Fair, Reasonable and Adequate

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small." Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000); see also, City P'ship Co. v. Atlantic Acquisition Ltd. P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996).

Moreover, "there is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." In re Relafen Antitrust Litig., 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).

As a result, the courts of the First Circuit rely variously on a number of factors, the most common of which include:  (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; (8) the settlement's terms and conditions.  See, e.g., Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. at 72; In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93

(D. Mass. 2005); <u>Celluci</u>, 191 F.R.D. at 8-9; and <u>M. Berenson Co. v. Faneuil Hall Marketplace, Inc.</u>, 671 F. Supp. 819, 822-833 (D. Mass. 1987).

In the case at bar, an examination of each of these factors demonstrates that the proposed settlement is fair, reasonable, and adequate to the members of the class, and should be preliminarily approved by the Court.

<u>First</u>, with respect to complexity, expense, and duration of litigation, it is clear that the prosecution of this case would be lengthy and expensive. "Class action litigation is inherently complex, and complexity makes litigation especially costly in terms of both time and money." § 13:52. *Criteria Governing Final Approval—Complexity And Expected Expense Of Trial*, 4 Newberg on Class Actions § 13:52 (5th ed.). While the judicial system always prefers settlement, it especially welcomes settlement in class suits. <u>Id</u>.

If this settlement is not approved, the Parties face an extended and costly battle <u>first</u> regarding conditional and class certification and <u>then</u> likely summary judgment on the merits of whether the Class Members were properly compensated for all hours worked, including overtime, and travel time.

In addition, the Parties will have to conduct expensive additional discovery, including numerous depositions, in preparation for trial; likely resulting in a lengthy and costly class action trial. Finally, if this case does not settle, despite the outcome on a dispositive motion or trial verdict, the case will likely take years to reach final resolution; generating enormous legal fees, including fees and costs related to the exhaustion of all appeals.

<u>Second</u>, with respect to the amount of the proposed settlement compared to the amount at issue, the Parties agree that the value of the settlement is fair and reasonable given the various challenges facing Plaintiff.

That is, if the sixteen (16) claimants were fully successful at trial, Class Members at most could expect to receive three (3) times their lost overtime wages and travel time pursuant to M.G.L. c. 149, § 148; M.G.L. c. 151, § 1A and 454 CMR 27.04(4). Pursuant to the Settlement Agreement, Class Members are entitled to three (3) times their estimated damages for lost overtime wages and travel time. See Exhibit 3 §§ 11 and 12. This is an excellent result for the Class Members as they claim they would have received the full benefit they could have received should they have been successful at trial without the significant cost of time and energy associated with protracted litigation. Further, given the risk that Plaintiff and the putative class could recover nothing if this litigation were to proceed, the Parties agree that this settlement amount is entirely appropriate and very favorable to the Plaintiff and the class he represents.

Third, with respect to the reaction of the Class to the settlement terms, as of the date of the associated Motion for Final Approval, there have been no objections to the Settlement Agreement submitted by any Class Member. See Exhibit 2. The Parties submit that the lack of an objection from an individual or entity with standing to attack the reasonableness, fairness, and adequacy of the Settlement Agreement lends further support to their joint request for final approval of the Settlement Agreement and the entry of the accompanying [Proposed] Final Order and Judgment.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, the Class Counsel received all requested information determined necessary to aggregate class damages for all claims in the case, and thus allowing them to assess the fairness of the settlement.

Also, the Parties engaged in extensive discussions about the relevant facts and legal merits of the claims asserted in the case. These discussions focused the practical and legal issues presented by this case, and the Parties contend that this settlement will resolve the risks which the Parties fully appreciate at this point in the litigation.

Fifth, with respect to the Plaintiff's likelihood of success in obtaining class certification and in recovering on the merits of the case, Plaintiff recognized that given the size of 15 Taylor and its limited number of employees, the putative class was small and would make obtaining class certification risky.  Finally, Plaintiff recognized that surviving summary judgment, or avoiding a significant reduction in available damages, would have been a significant hurdle.

Sixth, with respect to whether the Settlement Agreement provides benefits which Plaintiff could not achieve through protracted litigation, the Settlement Agreement provides the benefit of a prompt and fair resolution to all claims in the First Amended Complaint, and the avoidance of delay of the Class Members' receiving their portion of the settlement amount.

Seventh, with respect to whether the Settlement Agreement was reached as the result of good faith dealings and the absence of collusion, there is no evidence that this is not the case.  Both Plaintiff and Defendants are represented by experienced counsel in class action wage and hour litigation, who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients.

The settlement was negotiated on behalf of Plaintiff by a team of attorneys who have successfully represented numerous class representatives and putative classes in class actions, including other court approved settlements.[2]    The experience and reputation of counsel is

---

[2] See e.g., Baldassari, et al. v. Ciox Health, LLC, CA No. SUCV-2017-0925-BLS2 (Allowed May 31, 2018, Salinger, J.); Doe et al. v. The Medical Treatment Center of Revere, et al., CA No. SUCV-2014-3487A (Allowed May 15, 2018, Campo, J.); Chayet, et al. v. Liberty Mutual Ins. Co., CA No. SUCV-2016-03558-BLS1 (Allowed January 30, 2018, Kaplan, J.); Butler et al. v. Salisbury Five C's, Inc., et al., CA No. ESCV-1777-CV-1127C (Allowed April 17, 2018, Lu, J.); Topham et al. v. Roberts Towing, Inc. d/b/a Roberts Towing, CA No. SUCV-2017-0386-BLS1 (Allowed February 21, 2018, Kaplan, J.); Cabrera v. Progressive Direct Ins. Co., CA No. SUCV-2016-03716-BLS2 (Allowed February 14, 2018, Salinger, J.); Polanik et al. v. Boston Hill Donuts, LLC, et al., CA No. 1784CV00914-BLS2 (Allowed, September 28, 2017, Leibensperger, J.); Hyman et al. v. Metropolitan Property & Casualty Ins. Co., et al., CA No. SUCV-1684CV00488-BLS2 (Allowed, August 23, 2017, Sanders, J.); and Kappotis et al. v. Bertucci's, Inc. et al., CA No. SUCV-1584CV03821-BLS1 (Allowed, February 24, 2017, Kaplan, J.);

paramount, and, as noted above, the Parties were represented by experts in this area of law.  See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

As above, this settlement was negotiated by experienced counsel to assure all Class Members maintained their rights under the applicable laws, and was not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel.  Finally, as above, continued litigation would be long, complex and expensive, and a burden to court dockets.[3]

For the reasons above, there is no reason to doubt the fairness of the proposed Settlement Agreement as not only was the Settlement Agreement the result of protracted, good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated among counsel upon the review of extensive employment records.

---

[3] Litigating Plaintiff's claims would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Defendants denies that any violations of law have occurred or are occurring, Defendants would possibly appeal any adverse ruling. Similarly, Plaintiff would possibly appeal any adverse ruling. In contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the class.  Such a result will benefit the Parties and the court system.  Certainly, putting the matter out for notice in order to determine the reaction of the classes as a whole is warranted.

**B. <u>The Settlement Terms</u>**

    1. <u>Overtime Wage Calculation</u>

With regard to the overtime damages, Defendants have supplied records detailing each Class Member's work schedule, time cards and wages paid to Class Members.

Defendants paid each Class Member at their respective wages, between $15.00 and $30.00 hourly, for the hours worked. However, Defendants allegedly did not include an additional 50% payment for any overtime hours Class Members worked beyond forty (40) hours per week.

Defendants have calculated the amount of overtime each Class Member has worked.[4] Defendants have multiplied the amount of overtime each Class Members has worked by a multiplier of 75% to account for the amount each Class Member should have received in additional pay for overtime worked and any discrepancies outlined in Fn. 6, <u>supra</u>. Defendants then trebled that amount to account for treble damages.  The total alleged overtime damages for the class amount to $4,616.83. Those damages trebled amount to $13,850.49.

    2. <u>Travel Time Wage Calculation</u>

With regard to the travel time damages, Defendants have supplied records detailing each Class Members work schedule, time cards and wages paid to Class Members.

Defendants at times required different Class Members to travel from their office located at 15 Taylor St. Springfield, MA 01103 to 905 Burnside Avenue, East Hartford, CT 06108.  Each way driven was approximately 30-40 minutes pursuant to the Parties research on the route.

---

[4] Defendants' records do not fully indicate the total amount of hours for each Class Member on every date. Defendants have done an extensive search through time cards and email records to identify as many shifts as possible for the purpose of negotiating an amicable settlement. Defendants have assumed in cases where it cannot fully locate Class Member data that each Class Member worked the entire shift that they were scheduled for. To account for the potential discrepancy for a Class Member who worked more than their scheduled hours on a shift, Defendants have used a .75 modifier to calculate overtime wages as opposed to a traditional .5 modifier. In cases where multiple weeks of incomplete time records occurred, Defendants used the average overtime that Class Member typically had in the weeks where accurate time records were available to estimate the amount of overtime they likely worked. There were two cases where no time records were available due to the brevity of employment, approximately 1-2 months. Defendants assumed 2.5 hours of overtime worked for those individuals due to their brief employment history with the Defendant.

The Parties agreed that an estimated time of thirty-five (35) minutes each way sufficed as a "Compromised Travel Time" factor.

Defendants then calculated the approximate number of days each Class Member would have traveled based on their respective schedules and positions within the company. Defendants multiplied the number of Class Member days of travel by the Compromised Travel Time factor to create the "Total Hours Traveled" for each Class Member. Defendants then multiplied Total Hours Traveled by a negotiated rate of 1.25 times each Class Members' rate of pay.[5]   Defendants then trebled that amount to account for treble damages. The total alleged travel time damages for the class amount to $5,738.09. Those damages trebled amount to $17,214.26.

With regard to both overtime and travel time, the Class will receive estimated alleged treble damages for the failure to fully compensate Plaintiffs for their work at 15 Taylor.  As is set forth above, this is an excellent result for the Class Members and is a result is well within the reasonable standard.  Plaintiff's counsel also believe that the result is appropriate when considering the difficulty and risks of litigating class claims that involve the alleged misclassification of employees under the executive exemption of the FLSA and applicable state laws and failure to pay overtime.

As addressed above, pursuant to the terms of the Settlement Agreement, Defendants shall:

1. Pay $31,064.75, in to a Class Settlement fund be paid to Class Members;

2. Pay settlement administration costs, including but not limited to those associated with class notice, as provided for in the Settlement Agreement; and

---

[5] Defendants' records do not fully indicate whether travel time in a particular week would have been overtime for the Class Member. In an effort to effectuate a compromised settlement the Parties agreed to a 1.25 multiplier for travel time.

3. Pay Class Counsel's attorney fees and expenses, as well as any Class Representative's incentives fees, in the amounts approved by the Court, upon application of Class Counsel.

The terms and relief obtained under the Settlement Agreement are fair and reasonable as they represent the full amount the Settlement Class could have recovered had matter proceeded to trial. Accordingly, the standards for final approval are met in this case and the Court should grant the present motion.

A. **The Requirements for Certification Pursuant to Fed. R. Civ. P. 23 Have Been Met**

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action. Id.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. See, e.g., Amchem, 521 U.S. at 591; In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also, Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998); and Prudential II, 148 F.3d at 283.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status." Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it). This is also the case in other circuits. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class

action"). Here, as set forth below, all the elements of Rule 23 are met with respect to the proposed

settlement, which, accordingly, merits class certification.

1.  The Elements of Rule 23(a) are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules

of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of

subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all only if (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the claims or defenses
> of the class; and (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R Civ. P. 23(a). See, e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four

requirements of Rule 23(a) must be met in order for certification of a class to be proper"); Barnes

v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); Prudential II, 148 F.3d at 308-09. Here,

all four elements are easily satisfied.   Specifically, the proposed settlement consists of the

following subclasses:

a.  **FEDERAL SUBCLASS** – all individuals who have filed consents
    to join the Action (including without limitation all individuals who
    timely return a Claim Form containing a consent to join the Action)
    in any state in the United States and who worked for 15 Taylor in a
    non-exempt position within three years prior to filing their consent
    to join the Action.

b.  **STATE SUBCLASS** – all individuals who worked for 15 Taylor in
    a non-exempt position in Massachusetts, Connecticut or any other
    state at any time within the period of three years prior to the filing
    of the initial Complaint in this action through the date of final court
    approval of the class action settlement.

2.  Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  Plaintiff is not required to come before the Court and detail, to the person, the

exact size of the class or to demonstrate that joinder of all class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Advertising Special. Nat. Ass'n v. Federal Trade Comm'n, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948).; see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.RD. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members of a class is not necessary").

Furthermore, "numbers alone" are not determinative of numerosity, but rather, "the facts and circumstances of each case are to be taken into account to determine numerosity under Rule 23(a)(1)." Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985). Numerosity is achieved here because it is not practicable for all members of the putative class to be joined in this action given their varying geographic locations.

3. Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case." So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[6]

---

[6] Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)." In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").

Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). See, e.g., 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; accord So. States Police Benevolent Ass'n, 241 F.R.D. at 87. "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases."

Here, commonality is met insofar as the claims of the class representative and all Class Members are all predicated on the core common issue as to whether Defendants' pay practices properly compensated them for all hours worked per workweek and for travel time.  See e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 18 (D. Mass.2010) ("Commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members."); George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 175 (D. Mass. 2012)( "[H]ere the allegations against the Corporate Defendants are that their wage policies facially violated state law, which requires little individual inquiry."); see also Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only "illustrative" (quoting Berenson v. Fanueil Hall, 100 F.R.D. 468, 470 (D. Mass. 1984)).

Here, the claims arise from whether 15 Taylor employees were denied overtime compensation as a result of a corporate employment policy that applies to all 15 Taylor employees in non-exempt positions.  The lawsuit further challenges 15 Taylor's policy for compensation of travel time and reimbursement of travel-related expenses, which, again, is a corporate employment policy that applies to all non-exempt employees who travel to various property sites owned and/or managed by 15 Taylor. In a settlement context, this case is illustrative of a common issue sufficient to meet the 23(a)(2) standard.

---

Natchitoches Parish Hosp. Servs. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

4.  Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other Class Members.[7]  The typicality requirement is satisfied when the Class Members' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996); see also Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each Class Member's claim arises from the same course of events, and each Class Member makes similar legal arguments to prove the defendant's liability").  Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories." In re Carbon Black Antitrust Litig., 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also, Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[8]

This requirement is also met by the class proposed by Plaintiff, since he held one of the non-exempt positions that required travel among multiple properties owned and/or managed by 15

---

[7] The commonality and typicality requirements of Rule 23(a) "tend to merge." Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  See e.g., Id.; In re Screws Antitrust Litigation, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); Prudential II, 148 F.3d at 311; Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977); Asbestos School Litig., 104 F.R.D. at 429-30.

[8] In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims." In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass 2005) (quoting Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)); Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984).

Taylor properties.  Plaintiff further alleges that he was instructed to, and did, "bank" or "carryover" his hours worked in excess of forty (40) per week to the next week per a purported policy of Defendants' that prevented adequate compensation of overtime.  Thus, Plaintiff's claims are "typical" with regard to the entire class.  Further, this requirement is met by the proposed settlement class as Plaintiff claims that the claims allegedly all arise from a common course of conduct by Defendants.  Thus, for the purpose of settlement, Plaintiff contends that each plaintiff would put on would be essentially the same case (hence, commonality) and the named class representatives would, themselves put on that case (hence, their claims are typical).

5.  Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  In the First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation."  Bouchard v. Sec. of Health & Human Servs., No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); see also Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation").  These two components are designed to ensure that absentee class members' interests are fully pursued.

Adequacy is met here – plaintiff's attorneys, proposed Class Counsel, are experienced in complex litigation and have an established track record in employment law and class actions, including, specifically, the settlement of wage and hour cases.  See, fn. 1 supra.  In turn, the class representative has no interests whatever antagonistic to the class and has demonstrated his

allegiance to this litigation through his patience and participation in the settlement process on behalf of all of these putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiff now turns to consideration of the factors which, independently, justify class treatment of this action under subdivision 23(b)(3) of the rule.

6.  The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

Plaintiff's proposed class also meet the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978); see also, In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for

20

individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); <u>Dietrich</u>, 192 F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. <u>See</u>, <u>e.g.</u>, <u>Smilow</u>, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); <u>In re Telectronics Pacing Systems</u>, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and whether these issues are common to the class. If so, particularly in the settlement context, common questions are held to predominate over individual questions. <u>See</u>, <u>Id.</u>

The Parties asserts that common questions of law and fact predominate. All of Plaintiff's claims arise out of common corporate-wide policies defining how employees recorded hours worked and travel time and were reimbursed for travel-related expenses. According to Plaintiff, this presents common operative facts and common questions of law which predominate over any factual variations in the application compensation and reimbursement policies to individual benefits analysts nationwide.

These common questions of law and fact include, without limitation:  (a) whether Defendants' compensation policy is proper under applicable federal and state laws; and (b) whether Defendants have violated applicable federal and state laws by failing to pay non-exempt employees for all wages owing and due them; (c) whether Defendants' policy for recording and compensation of travel-related time is proper under applicable federal and state laws; and (d) whether Defendants' travel-related expense reimbursement policy is proper under applicable

federal and state laws. These common questions of law and fact suffice in this settlement class to present a predominance of common issues for the purpose of settlement.

The Parties also asserts that superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against Defendants in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits and given the commonality of claims relating to standard policies, there would be little or no interest for each Class Member to proceed with their own case – indeed, the plan of distribution treats all Class Members equitably by providing payments based upon length of employment.

Accordingly, strictly for the purposes of settlement, the Parties agree that there is no danger that individual variations, type or magnitude of damage suffered by individual Class Members will affect predominance, as the class representative has suffered the same type of damages – and seeks the same type of relief – as all members of the proposed class.

Finally, resolution of this litigation by class settlement is superior to the individual adjudication of Class Members' claims for compensatory relief.  In particular, the settlement provides Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly in the settlement posture in which the case now stands, the matter is appropriate and should be certified for settlement purposes.

V.    **THE PARTIES COMPLIED WITH THE TERMS OF THE SETTLEMENT AGREEMENT**

A. **Negotiations and Confirmatory Discovery**

Following extensive negotiation, Defendants provided confirmatory discovery in the form of payroll journals, timeclock summaries and emails regarding work performed at 15 Taylor. See Exhibit 1.

After Plaintiff's counsel's verification of the confirmatory discovery provided by Defendants, the Parties executed the Settlement Agreement. See Exhibit 2.

B. **Class Notice**

The Preliminary Approval Order entered by the Court on May 11, 2018, approved the provision of notice to the Class Members by first class mail, in the format proposed by the Parties.

As stated above, on May 25, 2018, Defendants compiled and mailed to members of the Settlement Classes packets containing a notice of the Parties' proposed settlement in the revised format submitted to the Court on April 18, 2018 and a Consent to Join and Claim Form. Defendants sent Notice Packets by First Class U.S. Mail to each member of each of the Settlement Classes at such individuals' last known address. See Exhibit 1.

If a Notice Packet was returned undeliverable, Defendants promptly attempted to locate such Settlement Member of the Classes by an electronic search through a recognized database and re-mailed once the Notice Packet to such address obtained from the electronic background search within ten (10) days of receipt of the undeliverable notice. See Exhibit 1.

In accordance with the terms of the Preliminary Order and Notice requirements set forth in the Settlement Agreement, Notice to Class Members has been issued. The Parties have not received a single objection to the proposed Settlement Agreement. See Exhibit 2.

Accordingly, the distribution of the Notice complied with the requirements of Due Process and the standards of fairness, completeness, and neutrality required under the authority of the Court, the law of Massachusetts and the requirements of the Constitution of the United States.

## VI.    CONCLUSION

For the foregoing reasons, the Parties respectfully request this Court grant final approval of the Settlement Agreement and enter the [Proposed] Final Order and Judgment, attached to the motion for approval as Exhibit 4.

Respectfully submitted,

| | |
|---|---|
| Plaintiff,<br>By his attorneys, | Defendants,<br>By their attorney, |
| /s/ David R. Relethford, Esq.<br>David R. Relethford, Esq.<br>Michael C. Forrest, Esq.<br>Forrest, LaMothe, Mazow, McCullough,<br>Yasi & Yasi, P.C<br>1 Salem Green, Suite 2<br>Salem, MA 01970<br>Telephone:    617.231.7829<br>Facsimile:    617.517.3271 | /s/ Christopher M. Pardo, Esq.<br>Christopher M. Pardo, Esq.<br>Constangy, Brooks, Smith & Prophete, LLP<br>535 Boylston Street, Suite 902<br>Boston, MA 02116<br>Telephone:    617.849.7884<br>Facsimile:    617.849.7874 |

DATED:  July 25, 2018.

## CERTIFICATE OF SERVICE

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on July 25, 2018.

/s/ David R. Relethford, Esq.
David R. Relethford, Esq.